CLERK, U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

MAR 2 2 2005

LODGED_____ REC'D_____
PAID_____ DOCKETED_____

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>ROY R. BELLOWS-FAIRCHILD and<br>TRINA H. BELLOWS-FAIRCHILD,<br><br>Debtors. | Case No. 304–34345-tmb7 |
| UNITED STATES TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>M. ELLIOTT LYNN,<br><br>Defendant. | Adversary Proceeding No. 04-3255-tmb<br><br>MEMORANDUM OPINION |

This matter came on for trial on February 1, 2005, on the United States's Trustee's (hereinafter "US Trustee") complaint for injunctive relief against defendant M. Elliott Lynn (hereinafter "Defendant") seeking to enjoin Defendant from practicing law in the United States Bankruptcy Court for the District of Oregon and seeking a fine or penalty in the amount of $1,000.00, and an award of attorney fees. The US Trustee, Ilene J. Lashinsky, was represented by Pamela J. Griffith and Defendant appeared pro se.

Page 1 - MEMORANDUM OPINION

I have reviewed my notes, the exhibits, and the pleadings and other submissions in the file. I also have read applicable legal authorities, both as cited to me and as located through my own research. I have considered carefully the oral testimony and arguments presented and have read counsel's submissions in detail. The following findings of fact and legal conclusions constitute the court's findings under Federal Rule of Civil Procedure 52(a), applicable in this proceeding under Federal Rule of Bankruptcy Procedure 9014.

## FACTS

The facts in this case are largely uncontested. Defendant represented Roy R. Bellows-Fairchild and Trina H. Bellows-Fairchild (hereinafter "Debtors") in two matters prior to the filing of a Chapter 7 bankruptcy case which was filed on May 3, 2004. First, Defendant represented the Debtors in a claim relating to a 1999 car accident in which Roy R. Bellows-Fairchild was injured. The matter was resolved for the sum of $25,000.00. However, there was a dispute with the Debtors' own insurance company, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") and $8,707.10 of the $25,000.00 was held in Defendant's trust account pending resolution of this dispute.

Before that dispute was resolved, Defendant also represented the Debtors in a claim against State Farm for underinsured damages relating to that same car accident. On March 17, 2004, one of State Farm's attorneys, Simon Harding, sent a settlement check made payable to Roy Bellows-Fairchild and Defendant in the amount of $14,000.00. The letter was sent with certain restrictions regarding disbursement of those funds and a settlement of the dispute over the $8,707.10. Defendant did not follow the restrictions contained in Mr. Harding's letter and disbursed all the funds from his client's trust account as outlined below. However, at trial, I ruled that the dispute between Defendant and State Farm was not relevant to the current matter.

Defendant deposited the check for $14,000.00 into his client trust account. On or about April 5, 2004, Defendant borrowed the sum of $8,500.00 from the Debtors and wrote a check out of

Page 2 - MEMORANDUM OPINION

his client trust account for cash. No promissory note or other writing documenting this loan was prepared.

Defendant testified at trial that he explained to his clients that they should seek independent legal advice before loaning him the $8,500.00, but that the Debtors declined to do so. Defendant did not document his advice in writing nor did the Debtors sign anything indicating they had received the advice. At the 341(a) meeting of creditors held on June 9, 2004, the Trustee, Thomas R. Renn (hereinafter "Trustee" or "Renn") asked the Debtors "[d]id Mr. Lynn suggest to you that you contact an additional attorney, an outside attorney to deal with this transaction with him?" Both Mrs. Bellows-Fairchild and the Defendant answered "No." Mr. Bellows-Fairchild further elaborated "I didn't think it was necessary. I'd known him for along [sic] time."

On April 9, 2004, Defendant transferred $5,000.00 out of his client trust account to Mr. Bellows-Fairchild in two checks, one for $1,500.00 and one for $3,500.00. Defendant accompanied Mr. Bellows-Fairchild to the bank and was assured his client received cash. This left $500.00 in Defendant's client trust account.

Defendant also represented the Debtors in their bankruptcy case. On March 31, 2004, Debtors signed several documents relating to their bankruptcy case including the Voluntary Petition, Exhibit "C", the § 521 Statement of Intent, the Schedules, and the Statement of Financial Affairs ("SOFA"). However, these documents were not complete when executed by the Debtors. At trial, Defendant's estimate was that approximately 50 percent of the documents had been completed at the time they were executed by the Debtors.

Defendant signed the Debtor's Attorney Disclosure of Compensation on April 6, 2004, the Voluntary Petition on April 15, 2004 and the § 521 Statement of Intent on May 1, 2004. The petition was filed on May 3, 2004. Between the time the Debtors signed the documents and the filing date, Defendant completed the documents relating to the Debtors' bankruptcy filing. Defendant did not confirm with the Debtors that the information contained therein was accurate.

Page 3 - MEMORANDUM OPINION

The Debtors' Schedule B — Personal Property had the following entry for description of cash on hand "Personal Injury Settlement (Roy $9,950; Trina $1,500)" and listed the current market value as $11,400.00. "None" was checked for both accounts receivable and for other liquidated debts owing debtor (Questions 15 and 17, respectively on Schedule B).

The Debtors' Schedule C listed, inter alia, the following assets as exempt:

| "Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property Without Deducting Exemptions |
|---|---|---|---|
| * * * | | | |
| Debtors Right to receive property on account of personal injury to debtor. Roy R. | ORS 18.345(1)(k) | $10,000 | $10,000 |
| Debtors Right to receive property on account of personal injury to debtor. Trina H. | ORS 18.345(1)(k) | $10,000 | $10,000 |
| * * * | | | |
| Debtors right to receive payment for loss of future earnings | ORS 18.345 (1)(L) | $25,000 | $15,000" |

"State Farm Ins. Co." was listed in Debtors' Schedule F — Creditors Holding Unsecured Nonpriority Claims in the amount of $9,000.00. Additionally, Question 4 on the SOFA which requested information on "Suits and administrative proceedings, executions, garnishments and attachments" listed an "Underinsured Motorist Claim" with "State Farm Ins. Co." and stated it settled for $14,000.00 and a notation in brackets of "$4,000 W and $10,000 H" with no further explanation.

Question 9 of the SOFA which requested information on "Payments related to debt counseling or bankruptcy" listed a payment to Defendant on March 31, 2004, of $1,125.00 [1]. Question 10, which requested information on transfers of property other than the ordinary course of

---

[1] Defendant testified these funds came from the $8,707.10 he was holding in his Client Trust Account from the first settlement with State Farm. The remainder of these funds were disbursed prior to the bankruptcy.

Page 4 - MEMORANDUM OPINION

business or financial affairs had no information and the "None" box was checked.

At the 341(a) first meeting of creditors, the Trustee inquired about the $11,400.00 in cash listed on the schedules. At that time, both Debtors and Defendant indicated that the Debtors had loaned the $8,500.00 to Defendant. When the Trustee inquired as to what happened to the $14,000.00 settlement check, Defendant responded that "[t]en went to the Mister, four went to the Missus, and then Mister loaned me 8500 out of his exempt 10,000." (Pl's Ex. 5)

When the Trustee inquired whether the Debtors had any of the $5,000.00 remaining from what was paid to them on April 9, 2004, the Debtors' response was "no." The Debtors further indicated that they may have had some money on the date of filing, but the amount was insignificant and certainly they had nothing close to $11,400.00, as listed on their Schedule B. Defendant admitted that he was including the $8,500.00 loan to himself in the amount noted in Schedule B.

The Trustee wrote Defendant a letter on June 12, 2004, indicating that his position with respect to the Debtors' loan to Defendant was ". . . that those funds are property of the bankruptcy estate and not subject to the claimed exemptions. Based on that position, please do not repay the money to the debtors. Please let me know your intention regarding repayment of the loan and forward any payments to me." (Pl's Ex. 11) The Trustee also included a copy of the In re Samantha Smith case, an unpublished Oregon bankruptcy court decision, decided by the Honorable Frank R. Alley which ruled that personal injury proceeds lost their exempt status once they were loaned to the debtor's parents. The Trustee further informed Defendant that the failure to list the loan on the Debtors' bankruptcy schedules was a concern to him and required an explanation.

On June 26, 2004, the Trustee again wrote to Defendant requesting documents. He reiterated his position that the loan was property of the bankruptcy estate and stated that it was his belief that the loan funds were not exempt. He indicated that he would be filing an objection to the Debtors' claim of exemption and further stated "[y]ou indicated that you would let me know the

Page 5 - MEMORANDUM OPINION

status of the sale of your modular home and let me know when you can pay me the balance due." (Pl's Ex. 11)

On July 1, 2004, the Trustee filed an objection to the Debtors' claimed exemptions. On July 19, 2004, Defendant responded and a hearing was set for August 16, 2004. The Trustee appeared at that hearing and Defendant did not. An order sustaining the Trustee's objection to the Debtors' claimed exemptions was entered on October 1, 2004.

Defendant loaned the $8,500.00 he borrowed from the Debtors to his solely owned company, Black Hawk Funding, to purchase a modular home to be renovated. Defendant invested an additional $1,500.00 in the Black Hawk Funding modular home for a total of $10,000.00. In July 2004, the modular home sold for $13,000.00 and Defendant received $10,000.00 in cash from Black Hawk Funding.

There was a dispute as to whether Defendant had promised to pay the Trustee when the modular home sold with the Trustee asserting that Defendant had promised to repay the estate and Defendant denying such a promise. However, at trial Defendant agreed that "those funds would probably be the best source of repayment." Defendant had cash and although he realized he owed the Trustee $9,000.00, he did not repay the Trustee.

Defendant kept the $10,000.00 in cash at his home and began to spend it. Sometime in October 2004, the Debtors contacted Defendant indicating that they really needed funds. Defendant told them to come and get what he had left of the $10,000.00. Defendant gave the Debtors $3,500.00, however, he insisted that this was not a repayment of the loan, but a gift to them. The remaining proceeds from the sale of the modular home were spent by Defendant. Defendant agrees that he owes the estate $9,000.00. However, Defendant is currently unemployed and has asserted he has no ability to pay the estate at this time. Moreover, Defendant acknowledged that as a result of his being unaware of Judge Alley's decision in Smith, his clients lost the exemption amount in the personal injury settlement.

Page 6 - MEMORANDUM OPINION

Defendant also testified that he disbursed the remaining $500.00 from his client trust account to himself for work done for the Debtors. However, he was not specific as to what work was completed and whether it was related to the bankruptcy case or not. No order allowing dispersal was sought.

## ISSUE

Whether the conduct of the Defendant as attorney for Debtors is sufficient to bar the Defendant from practicing law in the United States Bankruptcy Court for the District of Oregon and, if so, for what period of time.

## DISCUSSION

"The 'bankruptcy court has the inherent and statutory power and authority to suspend or remove any attorney from the roll of attorneys allowed to practice' before it." In re Crayton, 192 B.R. 970 (9th Cir. BAP 1996) citing In re Derryberry, 72 B.R. 874 (Bankr. N.D. Ohio 1987). However, "[d]isbarment proceedings 'are not for the purpose of punishment, but rather seek to determine the fitness of an official of the court to continue in that capacity and to protect the courts and public from the official ministration of person [sic] unfit to practice.'" Id. at 976.

In this case the US Trustee contends that the Defendant is unfit to represent debtors before this court. In support of that she points to his failure to accurately complete the Debtors' Schedules and SOFA, his failure to complete those documents before having his clients sign them, his failure to provide his clients with copies of the completed Schedules for their review prior to filing the documents with the court, and his failure to disclose the Debtors' loan to Defendant. Defendant concedes that there were errors in the Debtors' Schedules and SOFA, but argues that imposition of an injunction prohibiting him from practicing before this court is unwarranted because the errors were "honest" mistakes.

"[O]ne of the most important duties of the debtor's attorney [is] preparing the debtor's schedules and statement of affairs." 4 Colliers on Bankruptcy, 15th Ed. ¶ 521.03[3] at page 521-8.

Page 7 - MEMORANDUM OPINION

Thus,

> "[i]n the preparation of the schedules nothing should be taken for granted. The attorney should carefully investigate the affairs of the debtor and make certain that the attorney has all the information needed to prepare full and complete schedules, for it is the duty of the debtor to present intelligible and true schedules. Although, depending on the sophistication of the debtor, it may be possible to have the debtor, especially a business debtor, prepare a first draft of the schedules, <u>the attorney for the debtor has a responsibility to review [the] schedules to ensure that they are complete and in compliance with the Code and the Federal Rules of Bankruptcy Procedure.</u>"

4 Colliers on Bankruptcy, 15th Ed. ¶ 521.03[3], page 521-10. (Emphasis added).

In this case the Defendant fell woefully short in meeting his responsibility to accurately and completely prepare the Debtors' Schedules and SOFA. He misstated the amount of cash on hand held by the Debtors at the time of the filing, failed to disclose the account receivable he personally owed to the Debtors, and failed to disclose the fact that the Debtors had transferred $8,500.00 to him within the year preceding the bankruptcy filing. To compound the problem, he advised the Debtors to sign both their Schedules and SOFA, including the verifications that the information contained in the documents was complete and accurate, before the documents were completed and apparently never provided his clients with completed copies of those documents.

The Defendant testified, repeatedly, that the mistakes made in connection with the preparation and filing of the Schedules and SOFA were the result of his "honest" belief that the Debtors were entitled to exempt all of the funds received from the settlement of their personal injury claim. I believe this is probably true. It appears that the Defendant, having determined in his mind that all of the Debtors' assets were exempt, believed that it was unnecessary to accurately disclose the details of the Debtors' financial situation, provided that the documents presented the court with an "overall" picture of the Debtors' finances. He is mistaken.

"The purpose of the requirement of filing a statement of financial affairs is to furnish the trustee and creditors with <u>detailed</u> information about the debtor's financial condition, thereby saving the expense of long and protracted examination for the purpose of soliciting the information." 4

Page 8 - MEMORANDUM OPINION

Collier's on Bankruptcy, 15th Ed., ¶ 521.09 at page 521-34 (emphasis added). <u>See also</u> <u>Garcia v. Coombs (In re Coombs)</u>, 193 B.R. 557, 563 (Bankr. S.D. Cal. 1996). This requires <u>full</u> disclosure of the precise nature of all of a debtor's assets and liabilities. Neither a debtor nor his attorney is entitled to omit information or provide partial information simply because, in their view, the information provided is sufficient to allow the trustee to determine the value of a debtor's estate. Thus, the Defendant's belief that the funds from the settlement of the Debtors' personal injury action, including those transferred to him prepetition, were exempt, did not relieve him of the responsibility of disclosing the transfer or of accurately reporting the actual amount of cash held by the Debtors at the time of filing.

  Of equal, and perhaps greater concern, is the fact that the Defendant does not appear to understand either the nature of his errors or the gravity of them. Throughout the hearing on this matter the Defendant admitted that he had erred in his belief that the Debtors could claim an exemption in the funds received by them in settlement of their personal injury action even after a significant portion of those funds had been loaned to him. He took the position, however, that his error did not justify barring him from practicing before this court. In making this argument the Defendant misconstrues the nature of the US Trustee's allegations against him. The US Trustee is not so concerned with the fact that the Defendant was incorrect in his analysis of the Debtors' exemption rights, but with his failure to exercise a reasonable level of care in the preparation of the Debtors schedules as well as the fact that he advised his clients to sign the documents, <u>and verify them as correct</u>, prior to their completion. The Defendant's failure to exercise due care shows a lack of understanding of the nature of the disclosures required by the bankruptcy system. His advising his clients to verify the truth of statements contained in incomplete documents shows a lack of good judgment.

  In <u>Crayton, supra</u>, the court adopted the American Bar Association Standards for imposition of sanctions holding that "the factors which a court should consider in determining an

Page 9 - MEMORANDUM OPINION

appropriate sanction . . . are: (a) the duty violated - was the duty to a client, the public, the legal system, or the profession? (b) the lawyer's mental state - did the lawyer act intentionally, knowingly, or negligently? (c) the actual or potential injury caused by the lawyer's misconduct - was there a serious or potentially serious injury? and (d) the existence of aggravating and mitigating factors." 192 B.R. at 980.

Here the Defendant's duty to accurately and completely prepare the Debtors' bankruptcy schedules was a duty owed both to the client and the legal system. Although I do not believe that the Defendant intended to mislead the Trustee or the court, his conduct in preparing the Schedules and SOFA shows a cavalier attitude toward the responsibilities imposed on him as Debtors' counsel by the Bankruptcy Code. His failure to exercise due care in performance as Debtors' counsel undermines the integrity of the bankruptcy system. Further as a result of his actions, his clients faced the risk that their discharge would be denied due to the "false oaths" they provided in connection with their Schedules and SOFA. Moreover, his failure to understand the law caused his clients to lose their exemption, thus, depriving them of $9,000.00. Further, given the Defendant's lack of understanding as to why his conduct is of concern to the US Trustee and this Court, I find that it is doubtful that he will exercise greater care toward his responsibilities in the future.

Based on these factors I believe the appropriate sanction to be imposed against the Defendant is that requested by the US Trustee, i.e. entry of a permanent injunction prohibiting the Defendant from appearing before the United States Bankruptcy Court for the District of Oregon. I believe that this sanction, although harsh, is necessary to protect the rights of both the court and the public. Defendant did not provide the Court with any evidence of mitigating circumstances which would justify a reduction of the discipline. However, I will not impose any monetary sanctions.

Ms. Griffith should prepare an order consistent with this Memorandum Opinion within 10 days.

*Trish M. Brown*
Trish M. Brown
United States Bankruptcy Judge

cc: Pamela J. Griffith
M. Elliott Lynn

Page 11 - MEMORANDUM OPINION